UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ROBERT MCCULLOCK,

                                        Plaintiff,

v.

ROBERT BROWN, et al.,

                                        Defendants.

Case No.: 18-cv-00548-WQH-JLB

**REPORT AND RECOMMENDATION**

**[ECF No. 58]**

## I.     <u>INTRODUCTION</u>

Plaintiff Robert McCullock, a state prisoner proceeding *pro se* and *in forma pauperis*, brings this civil rights action pursuant to 42 U.S.C. § 1983. (ECF Nos. 4; 13.) Plaintiff's Amended Complaint alleges that from 2016 through 2018, officials at the Richard J. Donovan Correctional Facility ("RJDCF") imposed a substantial burden on the exercise of his Buddhist faith in violation of the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and denied him equal protection of the law in violation of the Fourteenth Amendment. (*See* ECF No. 4 at 22–34.) Presently before the Court is Defendants' Motion for Summary Judgment. (ECF No. 58.) Plaintiff opposes Defendants' motion. (ECF No. 64.)

The Court submits this Report and Recommendation to United States District Judge William Q. Hayes pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1 of the Local

1

Rules of Practice for the United States District Court for the Southern District of California. After a thorough review of the parties' moving and supporting papers, the record in this case, and the applicable law, the Court hereby **RECOMMENDS** that the District Court **GRANT** Defendants' Motion for Summary Judgment.

## II. BACKGROUND

### A. Procedural History

On April 28, 2018,[1] Plaintiff filed an Amended Complaint against the then-acting RJDCF Community Resource Manager, Robert Brown, Rabbi Fabrice Hadjadj, J. Davies, and the then-acting Chief Deputy, P. Covello. (ECF No. 4 at 2.) Concurrently with his Amended Complaint, Plaintiff moved to proceed *in forma pauperis*. (ECF No. 5.)

On July 12, 2018, the Honorable William Q. Hayes granted Plaintiff's motion to proceed *in forma pauperis*. (ECF No. 13.) On September 18, 2018, Defendants Brown, Hadjadj, Davies, and Covello answered Plaintiff's Amended Complaint. (ECF No. 24.)

On June 26, 2019, Defendants moved for summary judgment. (ECF No. 58.) The Court provided Plaintiff with notice of the requirements for opposing summary judgment pursuant to *Klingele*/*Rand* and set a Briefing Schedule for Defendants' motion. (ECF No. 44.) On July 10, 2019, Plaintiff constructively filed an opposition to Defendants' motion. (ECF No. 64.) Defendants did not file a reply.

### B. Plaintiff's Allegations

Plaintiff alleges the following in his Amended Complaint:[2] Plaintiff has been a serious Buddhist practitioner for over ten years. (ECF No. 4 at 24.) His "faith mandate[s]

---

[1] Pursuant to the mailbox rule, the Court deems the date Plaintiff delivered his Amended Complaint to prison authorities for mailing as the Amended Complaint's filing date. *See Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009) ("[T]he *Houston* mailbox rule applies to § 1983 complaints filed by pro se prisoners.") (citing *Houston v. Lack*, 487 U.S. 266, 275–276 (1988))). The Amended Complaint shows April 28, 2018, as the date it was received by a CDCR staff member. (ECF No. 4 at 8.)

[2] The Court summarizes the allegations in Plaintiff's Amended Complaint for background purposes only. Because Plaintiff did not sign the Amended Complaint under

meditation, chanting, and prostration" in an indoor setting, such as the chapel at RJDCF. (*Id.*)  Group worship in the chapel is "necessary" because it "is needed to improve meditation with the assistance of other Buddhist practitioners." (*Id.*)

Buddhist inmates are scheduled for weekly chapel services at RJDCF, but from 2016 through 2018, Buddhist inmates were denied "weekly access" to the chapel because of the absence of chapel supervision for Buddhist services. (*Id.* at 24–25.)  Buddhist inmates were denied chapel access when Defendant Hadjadj, a Jewish Rabbi, failed to attend and supervise scheduled Buddhist services or when Defendants otherwise failed to provide supervision for Buddhist services "in the absen[ce] of volunteers." (*Id.* at 25–26.)  In 2017, there were no Buddhist services held on March 13, March 27, April 3, April 10, July 3, July 31, August 7, and August 28. (*See id.* at 19–20.)  In 2018, there were "about six Mondays in a row"[3] from January 1 to February 5 without Buddhist services. (*Id.* at 21.) Also from 2016 through 2018, Defendants failed "to provide foods at state expense for bi-annual Buddhist holiday." (*Id.* at 31.)

Defendant Covello, as Chief Deputy Warden, is "responsible for policy operation at RJDCF" and is the "moving force behind [California Department of Corrections and Rehabilitation ("CDCR")] policies." (*Id.* at 12.)  Defendant Brown, as the Community Resource Manager at RJDCF, is "the policy maker for all religious groups, chapel schedules, religious items, religious approved holiday and religious banquets" and

penalty of perjury, the Court cannot consider the allegations in it as evidence for purposes of this Report and Recommendation. *Moran v. Selig*, 447 F.3d 748, 759 & n.16 (9th Cir. 2006) (stating that unverified complaints "cannot be considered as evidence at the summary judgment stage"); *see also Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018) (noting that *pro se* inmates are exempted from "strict compliance with summary judgment rules," but not "all compliance"); *Harris v. Shelland*, No.: 15cv2442-MMA-JLB, 2017 WL 2505287, at *4 (S.D. Cal. June 9, 2017) (rejecting a *pro se* plaintiff's unverified complaint as evidence in ruling on a motion for summary judgment).

[3]    When Plaintiff filed his Amended Complaint, Buddhist services were scheduled in Facility D, where Plaintiff is housed, on Mondays from 9:20–11:30 AM. (ECF No. 4 at 24.)

"oversees all religious programs." (*Id.* at 13.) Defendant Hadjadj is a Jewish Rabbi at RJDCF and is also responsible for supervising Buddhist services. (*Id.* at 13–14.) Defendant Davies "is personally involved in the supervision" of Defendants Brown and Hadjadj "in directing them to communicate and cover Buddhist services weekly." (*Id.* at 14.)

Plaintiff alleges that a lack of weekly chapel access, because of the absence of supervision, substantially burdened his practice of Buddhism in violation of the First Amendment Free Exercise Clause (*id.* at 24–30) and RLUIPA (*id.* at 30–31). Plaintiff also alleges that a lack of holiday foods for a bi-annual Buddhist holiday substantially burdened his practice of Buddhism in violation of RLUIPA. (*Id.* at 31.) Additionally, Plaintiff alleges that each Defendant "intentionally discriminated against Plaintiff and other Buddhist prisoners" by "provid[ing] weekly chaplain supervision to other similarly situated religious groups, but not Buddhist[s]." (*Id.* at 33.)

## III. <u>MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST</u>

Defendants first contend that they are entitled to summary judgment with respect to all of Plaintiff's claims because Plaintiff failed to exhaust his administrative remedies before filing his Amended Complaint. (ECF No. 58-1 at 12–17.) Defendants identify two CDCR Form 602s ("grievances") that Plaintiff filed or signed with respect to some of the claims at issue and that were submitted to the third level of review: Appeal RJD-18-00579 and Group Appeal RJD-17-03023 ("the Group Appeal"). Defendants argue that Plaintiff did not exhaust his administrative remedies with respect to Appeal RJD-18-00579 because he did not submit it for third-level review, and receive a final decision on the appeal, until after he filed the Amended Complaint. (*Id.* at 12–13.) As to the Group Appeal, Defendants argue that this did not exhaust any of Plaintiff's claims because the Group Appeal was granted at the first and second level of review and Plaintiff "failed to put the prison on notice that any further action was necessary." (*Id.* at 17.)

///

///

**A.  Plaintiff's Administrative Appeals**

    1.    Appeal RJD-18-00579

On February 2, 2018, Plaintiff filed a grievance wherein he complained that there was "no weekly service," and the "Warden, [Assistant Warden], and Community Resource Man[ager] refuse[d] to correct violations of Rule, Law, Policy [and] Statute." (ECF No. 58-2 at 30.)  On March 6, 2018, Plaintiff's grievance was accepted at the first level of review and partially granted. (*Id.*)  In the First Level Appeal Response, L. Eshelman noted that Plaintiff had clarified in an interview "that [he] wanted RJDCF to provide weekly Buddhist services and to grant an inmate minister approval to the Buddhist group." (*Id.* at 34.)  Eshelman stated that "RJDCF is facilitating a nonpaid Buddhist volunteer to provide a service twice a month" and "will be reaching out to the local Buddhist community for additional volunteers." (*Id.* at 35.)  Eshelman further stated that "the institution head may at their discretion . . . designate a qualified inmate minister," but that was "not an option that is being discussed at this time." (*Id.*)

On March 14, 2018, Plaintiff submitted his grievance to the second level of review. (*Id.* at 31.)  On April 24, 2018, Plaintiff's grievance was accepted at the second level of review and denied. (*Id.* at 36.)  In the Second Level Appeal Response, Warden Paramo stated that Plaintiff did not clarify why he was dissatisfied with the first level response and reiterated the steps RJDCF was taking to ensure Buddhist services would be conducted regularly. (*Id.*)

On May 5, 2018,[4] Plaintiff submitted his grievance to the third level of review. (*Id.* at 31.)  On August 8, 2018, Plaintiff's grievance was accepted at the third level of review and denied. (*Id.* at 28.)  In the Third Level Appeal Decision, Appeals Examiner L. Warren found that Plaintiff had "failed to present sufficient evidence to warrant a modification to the institution's decision," as "RJD[CF] is providing bi-weekly Buddhist services utilizing

---

[4]    Approximately one week after Plaintiff filed the Amended Complaint on April 28, 2018. (*See* ECF No. 4 at 8.)

a Buddhist volunteer to provide the service." (*Id.*) Warren further reiterated that "the option of utilizing an inmate minister is at the discretion of the institution head when a chaplain of a particular faith cannot be obtained to conduct services." (*Id.*) Warren informed Plaintiff that the Third Level Appeal Decision "exhausts the administrative remedy available to [Plaintiff] within CDCR." (*Id.* at 29.)

    2.   <u>Group Appeal RJD-17-03023</u>

On June 12, 2017, RJDCF inmate Andrew Cejas filed a grievance directed at Defendant Brown and complaining of "weekly Buddhist services chapel access denied." (*Id.* at 12, 14.) Cejas wrote that Defendant Brown had "personally participated in [a] First Amendment deprivation by not providing a chaplain for supervision of weekly Buddhist services in the chapel that is required indoors." (*Id.* at 14.) Cejas further wrote that Defendant Brown had "not provided an alternative indoor area for weekly Buddhist services if [a] chaplain is not available for supervision" and had "not provid[ed] supervision if volunteers are not scheduled." (*Id.*) Cejas requested that Brown provide: (1) "weekly[,] supervised chapel access . . . by a CDCR chaplain"; (2) a "prisoner minister to guarantee indoor weekly chapel access"; (3) "alternative indoor area for weekly Buddhist services"; or (4) "supervision if [a] chaplain or Buddhist volunteers are not available." (*Id.*) An attached CDCR 602-G Inmate/Parolee Group Appeal form ("group grievance") shows that Plaintiff, along with five other inmates, signed and joined Cejas's grievance on June 8, 2017. (*Id.* at 16.) The group grievance echoes the allegations in Cejas's grievance by stating that Defendant Brown was responsible for the "weekly denial of chapel access." (*See id.*)

On July 21, 2017, the group grievance was accepted at the first level of review and granted. (*Id.* at 17.) In the First Level Appeal Response, Defendant Davies noted that "a review of the last seven scheduled services [showed that] the Buddhist inmates met twice." (*Id.*) In granting the appeal, Davies stated that "Buddhist volunteers have now been directed[] to communicate directly to R. Brown, CRM and Chaplain F. Hadjadj when they
///

cannot attend, and Chaplain F. Hadjadj will be required to provide coverage for the services the volunteers cannot attend." (*Id.*)

On July 25, 2017, Cejas submitted the group grievance to the second level of review, stating that he was "dissatisfied with the First Level [Appeal] Response because they have not made any mandatory memo that implement[s] chaplain[] supervision of Buddhist services, and other actions requested were not addressed." (*Id.* at 13.) Cejas further stated that Buddhist inmates "have not had weekly services for months. To be exact over 6 months (2017)." (*Id.*)

On August 24, 2017, the group grievance was accepted at the second level of review and granted again. (*Id.* at 19.) In the Second Level Appeal Response, Defendant Covello stated:

> After a review of Facility D Chapel Reports from 7/24/2017 to 8/21/2017[,] which is the last five weeks of services[,] [t]he Buddhist community had services and coverage by a chaplain or volunteer every week, except for the week of 8/24/2017. The institution is working in good faith to accommodate the Buddhist community on facility D and will continue to monitor the weekly services. Since the First Level Response[,] services have been covered except for the one week due to staff being out.

(*Id.* at 20.) Defendant Covello advised that "the issue may be submitted to the Third Level of Review, if desired." (*Id.*)

On August 31, 2017, Cejas submitted the group grievance to the Third Level of Review, stating only that he was "dissatisfied with the Second Level Response." (*Id.* at 13.) On October 17, 2017, Chief M. Voong of the Office of Appeals rejected the group grievance in a notice, stating that the "appeal was granted at the institutional level" and that there was "no unresolved issue to be reviewed at the Third Level of review." (*Id.* at 11.) Language at the foot of the notice advised that one "cannot appeal a rejected appeal, but should take the corrective action necessary and resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b)." (*Id.*)

///

**B. Legal Standard**

    1.   <u>Statutory Exhaustion Requirement</u>

       Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [§] 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Section 1997e(a) has been construed broadly to afford "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case" and encompass inmate suits about both general circumstances and particular episodes of prison life. *Porter v. Nussle*, 534 U.S. 516, 525, 532 (2002). "The 'available' 'remed[y]' must be 'exhausted' before a complaint under § 1983 may be entertained," "regardless of the relief offered through administrative procedures." *Booth v. Churner*, 532 U.S. 731, 738, 740 (2001); *see also McKinney v. Carey*, 311 F.3d 1198, 1200–01 (9th Cir. 2002) (per curiam) (finding that a prisoner's civil rights action must be dismissed without prejudice unless the prisoner exhausted available administrative remedies before he filed suit, even if he fully exhausts while the suit is pending). A prisoner is therefore required to "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009) (per curiam) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).

       The only limitation to the exhaustion requirement is that administrative remedies must be "available" to the prisoner. *See Ross v. Blake*, 136 S. Ct. 1850, 1862 (2016) ("An inmate need exhaust only such administrative remedies as are 'available.'"). Failure to exhaust remedies that are "effectively unavailable does not bar a claim from being heard in federal court." *McBride v. Lopez*, 807 F.3d 982, 986 (9th Cir. 2015). The prisoner bears the burden of demonstrating that "he 'took reasonable and appropriate steps to exhaust his . . . claim and was precluded from exhausting, not through his own fault.'" *Sapp v.*
*///*

*Kimbrell*, 623 F.3d 813, 822 (9th Cir. 2010) (quoting *Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010)).

Generally, the Ninth Circuit has held that a motion for summary judgment is the proper vehicle to raise whether a plaintiff has exhausted administrative remedies. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014). "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Federal Rule of Civil Procedure 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.* A defendant must first prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Id.* at 1172. Once the defendant has carried that burden, the "prisoner must come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* Even so, the ultimate burden of showing entitlement to summary judgment for a prisoner's failure to exhaust administrative remedies remains with the defendant. *Id.*

2. <u>CDCR Exhaustion Requirements</u>

In California, the CDCR's administrative exhaustion requirements are described in Title 15 of the California Code of Regulations. The CDCR has a three-level administrative appellate review process whereby an inmate or parolee "may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). An inmate's administrative remedies for a claim are not deemed exhausted until the claim is "addressed through all required levels of administrative review up to and including the third level." *Id.* § 3084.1(b) ("[A]ll appeals are subject to a third level of review, as described in [§] 3084.7, before administrative remedies are deemed exhausted."). To initiate the appeal process, an inmate or parolee must submit the appeal directly to the appeals coordinator at their institution within 30 calendar days of the occurrence of the event or decision being appealed. *Id.* § 3084.8(b)(1).

**C.    Discussion**

    1.    <u>Exhaustion of Appeal RJD-18-00579</u>

In their motion, Defendants argue that Appeal RJD-18-00579 does not exhaust any of Plaintiff's claims because the Office of Appeals ("OOA") did not issue their third-level, final decision denying the appeal on the merits until August 8, 2018, more than three months after Plaintiff filed the Amended Complaint on April 28, 2018.  (ECF No. 58-1 at 12.)  In support of their argument, Defendants have submitted the declaration of T. Ramos, Acting Chief of the Office of Appeals for CDCR.  (ECF No. 58-2 at 1.)  Ramos's declaration confirms that Plaintiff did not submit Appeal RJD-18-00579 to the third level, and the OOA did not issue a third-level decision on the appeal, until after Plaintiff filed his Amended Complaint.  (*Id.* ¶ 12.)  Ramos's declaration also confirms that the OOA "did not accept any other appeals from [Plaintiff] concerning the weekly Buddhist services a RJD[CF]," with the exception of the Group Appeal.  (*Id.* ¶¶ 8–13.)  In his opposition, Plaintiff makes no argument in response and provides no evidence to dispute Ramos's declaration.  (*See* ECF No. 64.)

As stated above, the PLRA requires that a state prisoner exhaust all administrative remedies before proceeding to federal court.  42 U.S.C. § 1997e(a).  In California, the exhaustion process is complete when a decision is issued at the third level of review.  Cal. Code Regs. tit. 15, § 3084.1(b); *Harvey v. Jordan*, 605 F.3d 681, 683 (9th Cir. 2010).  "[A] prisoner does not comply with [the exhaustion] requirement by exhausting available remedies during the course of litigation."  *McKinney*, 311 F.3d at 1199.  Here, the Court finds that Defendants have met their "burden of raising and proving the absence of exhaustion" with respect to Appeal RJD-18-00579.  *Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005).  The undisputed evidence before the Court shows that Plaintiff did not submit his grievance to the third level of review until May 5, 2018, and OOA did not issue a final decision on Appeal RJD-18-00579 until August 8, 2018.  Because Plaintiff had only submitted Appeal RJD-18-00579 to the second level of review at the time he filed the

///

10

Amended Complaint on April 28, 2018, Plaintiff failed to exhaust this appeal prior to filing this action.

Because Defendants have met their burden to show non-exhaustion, Plaintiff must "come forward with some evidence showing" that: (1) he properly exhausted his administrative remedies before filing suit; or (2) "there is something particular in his case that made the existing and generally available remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n.5 (9th Cir. 1996)). Plaintiff provides no argument or evidence in his opposition to refute Defendants' evidence of non-exhaustion, nor does the record provide any such evidence. Accordingly, the Court finds that Appeal RJD-18-00579 does not exhaust any of Plaintiff's claims.

### 2. Exhaustion of Group Appeal RJD-17-03023

#### a. *Parties' Arguments*

Defendants argue next that Group Appeal RJD-18-00579 also does not exhaust any of Plaintiff's claims. Defendants contend that because the Group Appeal was granted at the first and second level of review, and Plaintiff did not identify why he was dissatisfied with the second level response on the group grievance, "the third level of review had nothing to address." (ECF No. 58-2 at 16–17.) Defendants assert that because "Plaintiff failed to put the prison on notice that further action was necessary," he "cannot now use this appeal to argue that he exhausted his remedies as to all Defendants and claims in this case." (*Id.*)

In his opposition, Plaintiff states only that the Group Appeal "was not cancelled or rejected" at the third level, and that the appeal "complies with California Code of Regulations Title 15 § 3084.2(h)," which sets forth the requirements for group appeals. (ECF No. 64 at 1.)

///

///

### b. *Legal Standard*

As mentioned, the failure to exhaust administrative remedies is an affirmative defense on which the defendant bears the burden of proof. *Brown*, 422 F.3d at 936. The defendant cannot demonstrate an absence of exhaustion unless some relief remains available. *Id.* at 936–37. Therefore, the defendant must produce evidence that the prisoner did not properly exhaust a remedy that is available as a practical matter, in that it must be capable of use or at hand. *Albino*, 747 F.3d at 1171. Again, once the defendant meets that burden, the prisoner must "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* at 1172.

In California, prisoner appeals that are not accepted may be rejected or cancelled. Cal. Code Regs. tit. 15, § 3084.6. "When an appeal is not accepted, the inmate . . . shall be notified of the specific reason(s) for the rejection or cancellation of the appeal and the correction(s) needed for the rejected appeal to be accepted." *Id.* § 3084.5(b)(3). "[A] cancellation or rejection decision does not exhaust administrative remedies." *Id.* § 3084.1(b); *accord Wilson v. Soto*, No. CV 15-9546-PSG (JPR), 2017 WL 3275966, at *3 (C.D. Cal. June 13, 2017), *adopted sub nom. Wilson v. J.D. Soto*, No. CV 15-9546-PSG (JPR), 2017 WL 3269072 (C.D. Cal. July 31, 2017).

### c. *Discussion*

Defendants argue that Plaintiff "never submitted an appeal stating that he disagreed with the decision at the first and second levels of review" which "would have notified the institution that he was still not satisfied with the decision and that RJD[CF] needed to take further action." (ECF No. 58-1 at 16.) Defendants further assert, "Because Plaintiff failed to identify what he disagreed with from the first and second level of review and what other relief he sought, the third level of review had nothing to address," and the prison was not put "on notice that any further action was necessary." (*Id.* at 17.) Although it is not entirely clear, the Court interprets this to be an argument that Plaintiff's Group Appeal does not ///

satisfy his exhaustion requirement because the third level appeal was never resubmitted with further clarification as to what additional relief was being sought after it was rejected.

Defendants' present undisputed evidence that the OOA rejected the Group Appeal at the third level and, therefore, did not reach a final decision on the merits. Defendants have submitted the declaration of T. Ramos, Acting Chief of the Office of Appeals, who states that the Group Appeal "was rejected on October 17, 2017, because RJD[CF] had already granted the appeal." (*Id.* ¶ 11.) To his declaration, Ramos attached Plaintiff's "Inmate/Parolee Appeals Tracking System – Level III" log ("IATS log"), which contains all of Plaintiff's appeals received by the OOA at the third level. (*Id.* ¶ 3.) Plaintiff's IATS log shows that on October 17, 2017, log number RJD-17-03023—the Group Appeal—was screened out and rejected. (*Id.* at 9.) Further, Defendants have supplied the group grievance which shows a date stamp reading "Oct 17 2017" on the line designating rejected grievances[5] in the "Third Level – Staff Use Only" section. (*Id.* at 13.) Finally, Defendants provide the notice rejecting the Group Appeal at the third level, which states:

> Your appeal was granted at the institutional level. There is no unresolved issue to be reviewed at the Third Level of review.
>
> . . . .
>
> Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary and resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b). Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted. However, a separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if the appeal on the cancellation is granted.

(ECF No. 58-2 at 11.)

In his opposition, Plaintiff argues, without any evidentiary support, that the Group Appeal "was not cancelled or rejected." (ECF No. 64 at 1.) Plaintiff's self-serving

---

[5] Concededly, the box next to the word "Rejected" is unchecked.

statement, however, is not enough to create a genuine dispute as to whether the Group Appeal was rejected at the third level. *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997). The undisputed evidence before the Court demonstrates that Plaintiff did not receive a third level decision on the Group Appeal's merits; rather, the appeal was rejected. Defendants have therefore met their burden to show that the appeal does not exhaust Plaintiff's administrative remedies. *See* Cal. Code Regs. tit. 15, § 3084.6(a)(1); *Bradley v. Villa*, No. 1:10–cv–01618 LJO GSA PC, 2015 WL 3540673, at *4 (E.D. Cal. June 3, 2015) ("A cancellation or rejection at the third level does not exhaust an inmate['s] administrative remedies because it is not a decision on the merits of the claim.").

Because Defendants have met their burden to show non-exhaustion, Plaintiff must "come forward with some evidence showing" that: (1) he properly exhausted his administrative remedies before filing suit; or (2) "there is something particular in his case that made the existing and generally available remedies effectively unavailable to him." *Williams*, 775 F.3d at 1191. Plaintiff has not done so, as he makes no argument in response, except his unsupported allegation that the appeal was not "rejected or cancelled." It is true that the notice rejecting the Group Appeal did not explicitly state that the appeal was rejected, nor did it specify the correction(s) needed for the appeal to be accepted, as required by § 3084.5(b)(3). However, the inclusion of directions for resubmitting rejected appeals in the notice plus the date stamp next to the "Rejected" box on group grievance, together, gave fair notice to Plaintiff that the Group Appeal was rejected, and Plaintiff never attempted to resubmit the appeal for consideration at the third level. Moreover, Plaintiff makes no argument that the language in the notice confused him about the Group Appeal's status.

The Court notes that the Ninth Circuit has held that a prisoner is not required to proceed to the third level of review to fully exhaust his claims where the prisoner's appeal was granted at the second level and no further relief remained available. *Brown*, 422 F.3d at 940 ("Once an agency has granted some relief and explained that no other relief is available, 'the administrative process has not been obstructed. It has been exhausted.'"

(quoting *Jasch v. Potter*, 302 F.3d 1092, 1096 (9th Cir. 2002))). Nor is a prisoner required to "appeal from a grant of relief, or a partial grant that satisfies him, in order to exhaust his administrative remedies." *Harvey*, 605 F.3d at 685. However, here, the Group Appeal was granted at the first and second level of review, but nothing in the decision at either level of review implied that no further remedies were available. Both the First Level Appeal Response and the Second Level Appeal Response advised that the group grievance could be submitted to the next level of review. (ECF No. 58-2 at 18, 20.) Additionally, although the notice rejecting the Group Appeal is not a paragon of clarity, as it contains instructions on how to proceed for both rejected and cancelled appeals, it did explain that additional administrative remedies remained available.[6]

Moreover, Plaintiff makes no argument that he was satisfied with the relief granted at the first and second levels of review. On the contrary, the record shows that the movant on the Group Appeal, Cejas, was *not* satisfied with the relief at the first and second levels of review. At the second level of review, he stated that he was "dissatisfied with first level response because they have not made any mandatory memo that implement[s] chaplain[] supervision of Buddhist services, and other actions requested were not addressed . . . ." (*Id.* at 13.) And although he failed to specify the nature of his dissatisfaction at the third level of review (which is why the appeal was rejected), he did explicitly say he was "dissatisfied with the second level response" (*id.*). *See Wilson v. Campbell*, No. 1:16–cv–00534–AWI–SKO (PC), 2018 WL 903585, at *4 (E.D. Cal. Feb. 15, 2018) (distinguishing *Harvey* and rejecting the inmate plaintiff's argument that he was not required to resubmit his rejected appeal to the third level of review because his appeal was

---

[6] The Court further notes that although the notice rejecting the Group Appeal was addressed to inmate Cejas, and not to Plaintiff, this does not excuse Plaintiff from his exhaustion requirement. *See Crane v. Evans*, No. C 07–00763 JF (PR), 2009 WL 3072460, at *3 (N.D. Cal. Sept. 22, 2009) (finding "the fact that [the] [p]laintiff was not personally informed of the outcome of [a] [withdrawn] group appeal [did] not constitute an exception to the exhaustion requirement").

partially granted at the second level review, for it was clear the plaintiff was dissatisfied by the partial grant at the second level).

For the foregoing reasons, the Court finds that there is no genuine dispute of material fact that the Group Appeal was rejected at the third level of review, and therefore, administrative remedies remained available to Plaintiff. Accordingly, the Group Appeal cannot exhaust any of Plaintiff's claims.

**D.    Claims Raised by Group Appeal RJD-17-03023**

Even if the District Court should disagree with this Court's determination and find that Plaintiff fully exhausted all available remedies with respect to the Group Appeal, the Court nonetheless recommends that Defendants' Motion for Summary Judgment be granted, either because Plaintiff's claims were not raised in the Group Appeal or because they lack merit. The Court first considers which of Plaintiff's claims, if any, the Group Appeal could have exhausted. Neither party makes an argument as to which claims were raised in the Group Appeal.

1.    <u>Legal Standard</u>

A plaintiff must administratively exhaust each of his claims before he can bring suit regarding those claims. *See Jones v. Block*, 549 U.S. 199, 211 (2001). In California, the regulations require a prisoner "to lodge his administrative complaint on a CDC[R] form 602 and 'to describe the problem and action requested.'" *Morton v. Hall*, 599 F.3d 942, 946 (9th Cir. 2010) (quoting Cal. Code Regs. tit. 15, § 3084.2(a)). "A plaintiff need not have included verbatim in his 602–appeal every claim he now seeks to assert in litigation, but he must have exhausted administrative review of each type of complaint he . . . brings before the [c]ourt." *Panah v. Cal. Dep't of Corr. & Rehab.*, No. 14–cv–00166–BLF, 2015 WL 1263494, at *11 (N.D. Cal. Mar. 19, 2015). "A grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved." *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009). "The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." *Id.*

With respect to exhaustion of specific defendants, California regulations require that the inmate "list all staff member(s) involved" and "describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(a)(3). Failure to identify a defendant in the CDCR 602 "bars federal review as to those [d]efendants not named." *Carter v. Paramo*, No.: 3:17-cv-1833-JAH-AGS, 2018 WL 4579854, at *7 (S.D. Cal. Sept. 25, 2018).

2. Discussion

As addressed above, Plaintiff asserts the following claims in his Amended Complaint against all Defendants: a violation of the First Amendment Free Exercise Clause for lack of weekly chapel access and Buddhist services; a violation of RLUIPA for lack of weekly chapel access and Buddhist services; a violation of RLUIPA for a lack of holiday foods for a bi-annual Buddhist holiday; and a violation of the Fourteenth Amendment Equal Protection Clause for intentional discrimination against Buddhist inmates. (ECF No. 4 at 24–31, 33.)

The group grievance sets forth that Buddhist inmates were denied weekly chapel access in violation of the First Amendment and RLUIPA. (ECF No. 58-2 at 14.) The group grievance further states that Defendant "Brown[] personally participate[d] in the First Amendment deprivation by not providing a chaplain for supervision of weekly Buddhist services," and that Brown had "not provided an alternative indoor area for weekly Buddhist services if [a] chaplain is not available for supervision" and had "not provid[ed] supervision if volunteers are not scheduled." (*Id.*)

The Court finds these allegations in the group grievance were sufficient to alert RJDCF to Plaintiff's free exercise and RLUIPA claims based on a denial of weekly chapel access due to a lack of chapel supervision. However, the group grievance does not contain any allegations with respect to Plaintiff's RLUIPA claim for lack of bi-annual Buddhist holiday foods. Therefore, the grievance could not have exhausted this claim.

As to Plaintiff's equal protection claim, the group grievance does not specifically mention an equal protection violation, as it does with Plaintiff's First Amendment and RLUIPA claims, but California inmates are not required to articulate all legal theories in

18-cv-00548-WQH-JLB

an appeal to exhaust them. *Griffin*, 557 F.3d at 1120. The absence of specific beliefs or allegations in the appeal that Defendant Brown treated Buddhist inmates differently from inmates of other religions does not render Plaintiff's equal protection claim unexhausted. The religious nature of the appeal and the facts it alleged—that Buddhist inmates were not being afforded weekly chapel access and Buddhist services due to a lack of chapel supervision—could have reasonably alerted prison officials to the disparate treatment of Buddhist prisoners. *See Sapp*, 623 F.3d at 824 ("A grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks to redress."); *Griffin*, 557 F.3d at 1120 ("The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation."); *see also Denegal v. Farrell*, No. 1:15-cv-01251-DAD-JLT (PC), 2018 WL 4616262, at *10 (E.D. Cal. Sept. 24, 2018) (finding an equal protection claim for gender discrimination exhausted where the inmate's grievance alleged that she was denied sex reassignment surgery, even though the grievance did not include "phrases like 'equal protection' or 'discrimination on the basis of gender or transgender status'"), *adopted by* No. 1:15-cv-01251-DAD-JLT (PC), 2019 WL 1220767 (E.D. Cal. Mar. 14, 2019). Therefore, the Court finds that the group grievance sufficiently raised Plaintiff's equal protection claim.

However, the only responsible party named and identified in the group grievance is Defendant Brown. (*See* ECF No. 58-2 at 12–16.) Section 3084.2(a)(3) makes clear that a grievance "must name or at least provide 'available information' about the staff members involved." *Morales v. Torres*, No.: 1:17-cv-01673-AWI-JLT (PC), 2019 WL 7282048, at *5 (E.D. Cal. Dec. 27, 2019). Because the group grievance specifically names Defendant Brown as the only responsible party, the Court finds that the grievance does not exhaust Plaintiff's claims against any other defendant. *See, e.g.*, *Martinez v. Swift*, No. C 13–3973 RS (PR), 2015 WL 1349525, at *2 (N.D. Cal. Mar. 25, 2015) (granting summary judgment for non-exhaustion because the prisoner's grievance did "not mention [the defendant], or describe with any specificity his actions or words," and therefore did not comply with § 3084.2(a)(3)). The group grievance is insufficient to satisfy the administrative

exhaustion requirement as to Defendants Hadjadj,[7] Davies, and Covello, as it failed to provide an opportunity for RJDCF to address Plaintiff's claims against them.

**E.     Conclusion**

For the foregoing reasons, the Court finds that neither Appeal RJD-18-00579 nor Group Appeal RJD-17-03023 exhaust any of Plaintiff's claims.  It is undisputed that Plaintiff did not submit Appeal RJD-18-00579 to the third level of review, or receive a decision at the third level, until after he filed the Amended Complaint.  It is also undisputed that Group Appeal RJD-17-03023 was rejected at the third level of review, and is therefore, unexhausted.  Further, Defendants have presented undisputed evidence that these are the only two appeals Plaintiff pursued with respect to the claims at issue in the Amended Complaint.  Accordingly, the Court **RECOMMENDS** that the District Court **GRANT** Defendants' Motion for Summary Judgment on the grounds that Plaintiff failed to exhaust administrative remedies as to all of his claims.

Alternatively, should the District Court find that Group Appeal RJD-17-03023 was fully exhausted, the Court **RECOMMENDS** that the District Court **GRANT** Defendants' Motion for Summary Judgment on the grounds that Plaintiff failed to exhaust his administrative remedies for all claims against Defendants Hadjadj, Davies, and Covello and his RLUIPA claim for bi-annual Buddhist holiday foods.

///

///

---

[7]     The Court notes that the First Level Appeal Response and the Second Level Appeal Response mention Defendant Hadjadj, but only in the context of the form of relief CDCR was granting to the complainants.  (*See* ECF No. 58-2 at 17, 19 ("The Buddhist volunteers have now been directed[] to communicate directly to R. Brown, CRM and Chaplain F. Hadjadj when they cannot attend, and Chaplain Hadjadj will be required to provide coverage for the services the volunteers cannot attend.").)  This does not change the fact that the group grievance specifically named, and was only directed to the alleged failings of, Defendant Brown.  The group grievance failed to put RJDCF on notice that Plaintiff had a complaint about how Defendant Hadjadj himself was meeting or failing to meet his alleged obligations to Plaintiff.

# IV.   **MOTION FOR SUMMARY JUDGMENT ON THE MERITS**

The Court turns next to Defendants' argument that, even if the Court finds that Plaintiff exhausted all of his claims, they are nonetheless entitled to summary judgment on the merits of the case.  (*See* ECF No. 58-1 at 17–25.)  As discussed, the Court finds that Plaintiff has not exhausted any of his claims, and therefore, Defendants are entitled to summary judgment on this ground alone.  However, should the District Court find that Group Appeal RJD-17-03023 exhausted Plaintiff's First Amendment free exercise claim, Fourteenth Amendment equal protection claim, and RLUIPA claim for a lack of weekly chapel access against Defendant Brown, the Court **RECOMMENDS**, for the reasons discussed below, that the District Court **GRANT** Defendant's Motion for Summary Judgment based on the merits of these claims.

## A.   **Undisputed Material Facts**

The record on summary judgment is sparse.  The only evidence Defendants submitted regarding the merits of this case are excerpts[8] from Plaintiff's deposition transcript.  (*See id.* at 31–56.)  Plaintiff likewise attached the same excerpts to his opposition and provided no other meaningful evidence.[9]  (*See* ECF No. 64 at 28–53.)  The

---

[8]      For reasons unknown to the Court, Defendants also "lodged" with the Court, by mail, Plaintiff's full deposition transcript.  (*See* ECF No. 59.)  Because the full deposition transcript is not on the docket, and therefore not part of the record, the Court does not consider it as evidence for purposes of this Report and Recommendation.

[9]      Plaintiff signed his opposition under penalty of perjury (ECF No. 64 at 6), so the Court may consider any facts contained therein that are based on Plaintiff's personal knowledge as evidence for purposes of the instant motion.  *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (considering as evidence a *pro se* plaintiff's "contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [the plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct" (citing *McElyea v. Babbit*, 833 F.2d 196, 197 (9th Cir. 1987))).  In contrast, and as noted above, Plaintiff did not sign his Amended Complaint under penalty of perjury.  (*See* ECF No. 4.)  Therefore, the Court cannot consider any facts contained therein, even if based on Plaintiff's personal knowledge, as evidence.  *See supra* note 2.  Plaintiff, however, filed four declarations signed under penalty of perjury as exhibits to his Amended Complaint.

Court therefore derives the following material facts from excerpts of Plaintiff's deposition transcript. Because both parties submitted identical excerpts, these facts are undisputed.

Buddhist inmates do not have access to the RJDCF chapel unless a Buddhist service is "scheduled and authorized." (ECF No. 58-1 at 49:3–6.) All services in the chapel must be supervised by a prison employee (such as a chaplain), a volunteer, or an inmate minister.[10] (*See id.* at 45:3–4; 47:17–20; 48:16–49:22; 51:10–16; 52:2–24.) Chaplains of

_____

(ECF No 12. at 3–11.) The Court considers the content of these declarations as evidence as well.

[10] The Amended Complaint, Defendants' Motion for Summary Judgment, and Plaintiff's opposition all allude generally to this supervision requirement. The Court also takes judicial notice of the following sections in Chapter 10, Article 6 of the CDCR Department of Operations Manual:

**101060.3    Responsibility**
Wardens are responsible for the religious programs in the institution and conservation camps. . . . The Chief Deputy Warden or an AW, shall provide supervision of the staff chaplains, intermittent chaplains, and part-time chaplains. Staff chaplains shall develop, supervise, and operate their assigned religious programs.

**101060.5    Religious Program Activities**
To implement the religious activities program, the Wardens may obtain the following qualified persons:
- Muslim, Jewish, Catholic, Protestant chaplains and a Native American Spiritual Leader on a full-time, part-time, or intermittent basis.
- Volunteer non-paid community clergy and/or religious or spiritual leader representatives.
- Inmates.

**101060.8    Location and Use of Chapel**
Where only one chapel is available, a schedule for the use of the chapel shall be prepared by the staff chaplains and approved by the Warden or designee.

Federal Rule of Evidence 201 permits a court to take judicial notice of two kinds of facts: (1) those that are "generally known within the trial court's territorial jurisdiction"; or (2) those that "can be accurately and readily determined from sources whose accuracy cannot

other faiths may provide Buddhist inmates with access to the chapel in the absence of a volunteer Buddhist chaplain when a Buddhist service is scheduled and authorized. (*Id.* at 49:15–19.) Plaintiff was deprived of Buddhist services in the chapel "once every month at the very minimum" because of "a chaplain who was absent or because there was no volunteer." (*Id.* at 51:7–16.) Sometime within the "last two to three years" of May 15, 2019, the date of Plaintiff's deposition, there was a thirteen-month period at RJDCF where no Buddhist services were held with a volunteer Buddhist, although within that time period, "[t]he Catholic chaplain let a group assemble." (*Id.* at 31:20–24.)

Plaintiff believes that one of the components of Buddhism requires a Buddhist chaplain to conduct Buddhist services. (*Id.* at 32:2–17; 43:24–25.) Plaintiff also believes that a Buddhist service cannot properly be conducted, and he cannot practice Buddhism, without a Buddhist chaplain present to conduct the service. (*Id.* at 42:6–43:3; 44:12–14.) To Plaintiff, a Buddhist service requires "somebody . . . at the level that [can] teach the other people of the [Buddhist] faith." (*Id.* at 49:9–12.)

Defendant Brown's responsibilities as the Community Resource Manager ("CRM") included "mak[ing] sure that there were [Buddhist] services conducted." (*Id.* at 33:18–21.) Defendant Brown's responsibilities as the CRM also included finding, training, and "put[ting] in the position [volunteers] to conduct those services, but he didn't do that." (*Id.* at 33:22–34:1.) Plaintiff believes that Defendant Brown violated his equal protection rights because "he did not do his responsibility in any way, shape, or form." (*Id.* at 56:21–24.)

**B.    Legal Standard**

Federal Rule of Civil Procedure 56 empowers a court to enter summary judgment on factually unsupported claims or defenses to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is appropriate if the materials in the record, together with the affidavits,

reasonably be questioned." *See also Brown*, 422 F.3d at 931 n.7 (taking judicial notice of the CDCR Department of Operation Manuel).

if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Albino*, 747 F.3d at 1166.

Each party's position as to whether a fact is disputed or undisputed must be supported by: (1) citation to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) a showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1). The court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). If a party supports its motion by declaration, the declaration must set out facts that would be admissible in evidence and show that the affiant or declarant is competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4). An affidavit will not suffice to create a genuine issue of material fact if it is "conclusory, self-serving . . . [and] lacking detailed facts and any supporting evidence." *Publ'g Clearing House, Inc.*, 104 F.3d at 1171.

When a defendant seeking summary judgment has carried its burden under Rule 56(c), the burden shifts to the plaintiff who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). The plaintiff "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). If the plaintiff fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 325.

## C. First Amendment Free Exercise Claim

### 1. Legal Standard

The free exercise clause of the First Amendment "requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). "Inmates clearly retain protections afforded by the First Amendment including its directive that no law shall prohibit the free exercise

of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citation omitted) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).

"To merit protection under the free exercise clause of the First Amendment, a religious claim must satisfy two criteria." *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994). First, an inmate must show that his religious belief is "sincerely held." *Id.* (quoting *Callahan v. Woods*, 658 F.2d 679, 683 (9th Cir. 1981)). Second, the inmate must demonstrate that his claim is "rooted in religious belief, not in 'purely secular' philosophical concerns." *Id.* (quoting *Callahan*, 658 F.2d at 683). To be deeply rooted in religious belief, an inmate's claim need not be compelled by or central to his religion. *See Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 708 (1981) ("The guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect."); *Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008) (noting that the "sincerity test" and not the "centrality test" applies to a free exercise analysis). Instead, "[d]etermining whether a claim is 'rooted in religious belief' requires analyzing whether the [inmate]'s claim is related to his sincerely held religious belief." *Malik*, 16 F.3d at 333.

Once the inmate makes this initial showing, he must then establish that a prison official's actions "substantially burdens [the] practice of [his] religion." *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015). "A substantial burden . . . place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Ohno v. Yasuma*, 723 F.3d 984, 1011 (9th Cir. 2013) (quoting *Guru Nanak Sikh Soc'y of Yuba City v. County of Sutter*, 456 F.3d 978, 988 (9th Cir. 2006)). In other words, the burden must prevent the inmate "from engaging in [religious] conduct or having a religious experience." *Navajo Nation v. U.S. Forest Serv.*, 479 F.3d 1024, 1033 (9th Cir. 2006), *overruled on other grounds by* 535 F.3d 1058 (9th Cir. 2008) (en banc).

The free exercise right, however, is necessarily limited by the fact of incarceration and may be curtailed to achieve legitimate correctional goals or to maintain prison security.

*O'Lone*, 482 U.S. at 348–49. Even when a prison policy or practice substantially burdens an inmate's religious exercise, it will not violate the First Amendment if the government can demonstrate that the policy or practice "is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 79, 89 (1987). In *Turner v. Safley*, the Supreme Court identified four factors for courts to consider when determining whether a regulation is reasonably related to legitimate penological interests: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally"; and (4) the "absence of ready alternatives," or, in other words, whether the rule at issue is an "exaggerated response to prison concerns." *Id.* at 89–90. The task in considering the *Turner* factors is not to balance the four factors, but to determine whether the state has shown a "reasonable" relation between the policy and legitimate penological objectives, rather than simply a "logical" one. *Beard v. Banks*, 548 U.S. 521, 522 (2006). However, "the burden . . . is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

### 2. Discussion

In the Amended Complaint, Plaintiff alleges that a lack of weekly chapel access and Buddhist services from 2016 through 2018 substantially burdened his practice of Buddhism in violation of the Free Exercise Clause. Plaintiff states that pursuant to § 101060.8 of the CDCR Department of Operations Manual, inmates are granted chapel access when "a state chaplain, other staff[,] or [a] religious volunteer is present," and "in the absence of a chaplain or religious volunteer," "custody staff are still required to supervise chapel access." (ECF No. 4 at 17.) Plaintiff alleges that from 2016 through 2018, he and other Buddhist inmates were deprived of weekly chapel access and Buddhist services because each Defendant did "not provid[e] chaplain supervision, or Buddhist

chaplain supervision." (*Id.* at 10.) Plaintiff further alleges that "each defendant . . . did not provide security coverage, or chaplain supervision in the absence of religious volunteers." (*Id.* at 29.) Plaintiff also contends that "[e]ach Defendant did not make any alternative accommodations" to "resolve not providing weekly Buddhist services when the supervising chaplain or volunteers [did] not show up for Buddhist service," such as appointing an "inmate minister" or "hir[ing] a Buddhist chaplain." (*Id.* at 18; *see also id.* at 26.) Plaintiff asserts that this lack of chapel supervision resulted in the deprivation of weekly chapel access, which substantially burdened his practice of Buddhism. (*See id.* at 27.)

The crux of Plaintiff's Amended Complaint is that he, and other Buddhist inmates, did not have access to the weekly scheduled Buddhist service in the chapel when there was no one to supervise the inmates. As for the religious accommodation he seeks, Plaintiff identifies three different accommodations for supervision in the Amended Complaint: (1) supervision from a staff chaplain, or in the absence of a chaplain, a correction officer; (2) the hiring of a full-time Buddhist chaplain; and (3) the appointment of himself or another inmate as an inmate minster pursuant to California Code of Regulations Title 15, § 3311. (*See id.* at 18, 26, 35.) The Court addresses each of Plaintiff's requested accommodations in turn.

a.  *Services Led and Supervised by a Non-Buddhist Chaplain*

The first religious accommodation Plaintiff seeks is the supervision of Buddhist services in the chapel by a staff chaplain, of in the absence of a chaplain, a correctional officer. Defendants argue that they are entitled to summary judgment on Plaintiff's free exercise claim for lack of weekly chapel supervision from staff chaplains or correctional officers because Plaintiff does not have a sincerely held religious belief that is accommodated by attending weekly Buddhist services led and supervised by a non-Buddhist. (*See* ECF No. 58-1 at 20.) Defendants contend that Plaintiff admitted in his deposition "that, unless the [c]haplain was Buddhist, and could teach Plaintiff something about his faith, he did not believe it was sufficient for him." (*Id.*) Defendants maintain

that Plaintiff's testimony "undercuts [his] entire First Amendment claim," because "if Plaintiff does not consider RJD[CF]'s weekly services, supervised by any available chaplain or volunteer to be compliant with his faith, then [] he cannot with any credibility also claim to 'sincerely believe' that attending these services every week is necessary or consistent with his faith." (*Id.*)  In his opposition, Plaintiff contends that he "never admitted that the services do not satisfy his religious need[s]."  (ECF No. 64 at 2, 5.)

As stated above, to prevail on a free exercise claim, Plaintiff must establish that the religious accommodation he seeks is based on a sincerely held religious belief.  *Shakur*, 514 F.3d at 884–85.  Generally, "[t]he sincerity of [religious] beliefs is a question of fact . . . not appropriate for decision at summary judgment."  *Isbell v. Ryan*, No. CV 11-0391-PHX-JAT, 2011 WL 6050337, at *6 (D. Ariz. Dec. 6, 2011).[11]  However, the Court here agrees with Defendants and finds that the undisputed evidence shows that Plaintiff does not have a sincerely held religious belief in attending weekly Buddhist services, unless the services are led and supervised by a Buddhist chaplain.

The Amended Complaint, which frames the claims in issue, does not allege that only a Buddhist chaplain may supervise Buddhist services to satisfy Plaintiff's religious beliefs.  Instead, the allegations in the Amended Complaint revolve around the denial of chapel access for Buddhist services because of the absence of *anyone* to supervise the services.  To illustrate, the Amended Complaint alleges that Defendant Hadjadj—a Jewish rabbi— would "not show up for scheduled services to guarantee Buddhist services every week,"

---

[11]  The Court notes that some district courts in the Ninth Circuit have concluded that "the weight of recent case law suggests that it is inappropriate for a court to grant summary judgment based on a Plaintiff's alleged lack of sincerity."  *Thomas v. Cox*, No. 313CV00508RCJCBC, 2019 WL 2509023, at *5 (D. Nev. May 3, 2019) (collecting cases), *adopted by* No. 313CV00508RCJCBC, 2019 WL 2517788 (D. Nev. June 17, 2019).  However, the Ninth Circuit has recently affirmed a district court's order granting summary judgment in favor of the defendants on an inmate's free exercise and RLUIPA claims because the inmate "failed to raise a genuine dispute of material fact as to whether his proffered religious beliefs were sincerely held."  *Merrick v. Ryan*, 719 F. App'x 702, 703 (9th Cir. 2018).

and that Defendant Hadjadj was "required to provide coverage for Buddhist services" when volunteers could not attend. (ECF No. 4 at 13, 19.) Further, Plaintiff requests injunctive relief in the form of "correctional officers to cover every week chapel services for Buddhist services throughout facility A-E in the absence of a chaplain," "chaplain supervision every week for Buddhist services, and/or hire Buddhist chaplain for supervision every week." (*Id.* at 35.) Buddhist "services," as Plaintiff describes them in the Amended Complaint, would not *require* the supervision of a Buddhist chaplain.

Yet, as Defendants highlight, Plaintiff admitted in his deposition that he believes only services held with a Buddhist spiritual leader are services that satisfy his religious needs:

> Q:     So you're saying that even if a chaplain of another faith was present to help you conduct your services, that still does not satisfy your faith because they're non-Buddhists themselves?
>
> A:     True, and that's also what your expert testimony stated.
>
> Q:     I'm not asking what my expert said because you're going to interpret that however you want. I'm just asking you, based on your beliefs, having a chaplain who is not Buddhist is not sufficient for you to have your Buddhist services?
>
> A:     As I stated before, one of the components is not there.
>
> Q:     Because they need to be Buddhists themselves, the chaplain?
>
> A:     Right. And as in any religion the person that's running the service should be someone that's more learned that those under him. Otherwise, what's the purpose if you're not learning, if you're not progressing in your religion?
>
> . . . .
>
> Q:     So whether a chaplain of another religion is present or not doesn't satisfy your requirements. You've made that clear, right?
>
> A:     You don't bring in a rabbi to run a mass.

Q:     Is there any way you can practice your faith without the presence of a Buddhist chaplain?

A:     You cannot have a Buddhist service without having Buddhists.

. . . .

Q:     So your belief is that a [Buddhist] leader is required to be present in order for it to count as a service?

A:     That is my belief.

(ECF No. 58-1 at 32:2–21; 42:6–13; 44:12–14.)

In his opposition, Plaintiff does not set forth any argument or facts supporting the contrary assertion: that he sincerely believes his need to attend weekly Buddhist services can be accommodated by the supervision of a staff chaplain of another faith or by a correctional officer. Plaintiff only argues that he "never admitted that the services do not satisfy his religious need[s]." (ECF No. 64 at 5.) However, Plaintiff's self-serving statement does not suffice to create a genuine dispute as to whether his belief is sincerely held. *See Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997). Plaintiff himself submitted the same deposition testimony wherein he admits that services in the chapel without a Buddhist chaplain present do not count as services and therefore, do not satisfy his religious beliefs. Thus, there is no genuine dispute that Plaintiff does not have a sincere religious belief in attending weekly Buddhist services in the chapel unless the service is led and supervised by a Buddhist chaplain. *See Hall v. Skolnik*, No. 2:10–cv–00054–JCM, 2012 WL 993726, at *4 (D. Nev. Mar. 23, 2012) (finding that there was no genuine dispute of material fact that the plaintiff's request for a kosher diet was not a sincerely held religious belief when the plaintiff testified that he had chosen to eat non-kosher foods even after the prison had provided him with kosher meals, because he had grown "tired of the lack of variety in the kosher menu"). Therefore, the Court finds that Defendant Brown is entitled to summary judgment on Plaintiff's free exercise claim for a lack of chapel supervision from non-Buddhist staff chaplains or correctional officers.

### b. *Services Led and Supervised by a Buddhist Chaplain*

The second religious accommodation Plaintiff seeks is the hiring of a full-time Buddhist chaplain to supervise and conduct Buddhist services in the chapel. Defendants do not dispute that Plaintiff has a sincerely held religious belief in attending Buddhist services with the supervision of a Buddhist chaplain, nor is there anything in the record to contradict Plaintiff's testimony that he sincerely believes attending services with a Buddhist chaplain is consistent with the mandates of his faith. The question then becomes whether Defendants have met their burden to show that Defendant Brown did not substantially burden Plaintiff's practice of Buddhism by failing to hire a full-time Buddhist chaplain.

Defendants argue that Plaintiff cannot show that Defendant Brown burdened the practice of his Buddhist faith in this respect because the "case law is clear that the Free Exercise Clause does not require the availability of full-time chaplains or volunteers of any faith." (ECF No. 58-1 at 18.) Defendants rely primarily on *Hartmann v. California Department of Corrections and Rehabilitation*, 707 F.3d 1114 (9th Cir. 2013), and argue that *Hartmann* "dispensed of similar claims" to those here. (*Id.* at 19.) Defendants further argue, without citation, that "[t]he Free Exercise Clause simply does not require prison administration to provide for weekly chapel access, let alone ensure that there is a chaplain for every faith, or an unpaid volunteer on a weekly basis." (*Id.* at 19–20.) Plaintiff offers no meaningful argument in reply.

As an initial matter, Plaintiff presents no evidence that Defendant Brown was responsible for the hiring of staff chaplains at RJDCF. The only evidence before the Court concerning the responsibilities of Defendant Brown as the CRM is Plaintiff's undisputed deposition testimony. In his deposition, Plaintiff stated only that he believes Defendant Brown's responsibilities as the CRM included "mak[ing] sure that there were [Buddhist] services conducted," and finding, training, and "put[ting] in the position each of the people to conduct those services." (ECF No. 58-1 at 33:18–34:1.) And by "people," Plaintiff clarified that he meant "Buddhist volunteers." (*Id.* at 33:25–34:1.) As the CRM—

Community Resource Manager—Defendant Brown's duties involved finding and training volunteers from the community to conduct religious services, not the hiring of full-time staff.[12]  For this reason alone, Defendant Brown is entitled to summary judgment on Plaintiff's free exercise claim for the denial of a full-time Buddhist chaplain.

However, even if Defendant Brown were responsible for the hiring of staff chaplains at RJDCF, the Court agrees with Defendants and finds that Plaintiff cannot show that Defendant Brown substantially burdened the practice of his Buddhist faith by failing to provide him with a full-time Buddhist chaplain to supervise Buddhist services because Plaintiff is not entitled to one under the Free Exercise Clause.  In *Hartmann*, the inmate plaintiffs alleged that prison officials violated their First Amendment right to free exercise of religion by denying their request for "a paid full-time Wiccan chaplain."  707 F.3d at 1120.  The plaintiffs argued that there were "no chaplains at [the prison] who [were] knowledgeable about [the] Wiccan religion or [were] otherwise sufficiently informed to provide religious counseling or other religious accommodation services to Wiccans."  *Id.* The *Hartmann* court, however, agreed with the district court that the plaintiffs had failed to state a claim under the First Amendment, concluding that "[t]he Free Exercise Clause [did] not require prison administration to provide [the] [p]laintiffs with more than that which they were currently receiving—i.e., the services of staff chaplains and a volunteer Wiccan chaplain."  *Id.* at 1123.  In making its determination, the court stated that although the plaintiffs "may be better able to exercise their religious beliefs with the assistance of a paid full-time Wiccan chaplain, it is well-settled that the First Amendment does not require prison administration to provide inmates with the chaplain of their choice."  *Id.* (citing *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972); *Ward v. Walsh*, 1 F.3d 873, 880 (9th Cir. 1993)).

---

[12]  The Court also takes judicial notice of Chapter 10, Article 6, § 101090.5 of the CDCR Department of Operations Manual, which sets forth the responsibilities of CRMs, including, *inter alia*, "supervis[ing] the recruitment of volunteers."

As provided in *Hartmann*, the Free Exercise Clause does not entitle Plaintiff to a full-time Buddhist chaplain to supervise and conduct Buddhist services, as RJDCF permits staff chaplains and Buddhist volunteers to supervise Buddhist services in the chapel. Although the Amended Complaint alleges several specific dates where Buddhist services were not held,[13] presumably because of a lack of chapel supervision, the Court cannot use this as evidence. Plaintiff testified in his deposition that he was deprived of Buddhist services "only once every month at the very minimum" when "there was a chaplain who was absent or because there was no volunteer." (ECF No. 58-1 at 51:7–16.) Plaintiff also testified that there was a thirteen-month period "within the last two to three years" of 2019 where Plaintiff did not receive "a single Buddhist service" with a *Buddhist* chaplain present, but the Catholic chaplain "let a group assemble" an unspecified number of times. (*Id.* at 31:20–24.) The evidence on summary judgment before the Court, although sparse, shows that Plaintiff did "receive the assistance of staff chaplains . . .—albeit not of the quality or as often as [he] would like." *Hartmann*, 707 F.3d at 1123. Thus, given that Plaintiff is not entitled to the full-time Buddhist chaplain, as he admittedly received the assistance of staff chaplains or Buddhist volunteers, Plaintiff cannot show that Defendant Brown's failure to hire a full-time Buddhist chaplain substantially burdened his practice of Buddhism. Accordingly, Defendant Brown is entitled to summary judgment on Plaintiff's free exercise claim for the absence of a full-time Buddhist chaplain to supervise and conduct Buddhist services in the chapel.

### c. *Services Led and Supervised by an Inmate Minister*

The third religious accommodation Plaintiff seeks is the designation of himself or another Buddhist inmate as an "inmate minister" to lead and supervise Buddhist services. Defendants do not dispute whether Plaintiff has a sincerely held religious belief in

---

[13]    As stated above, Plaintiff alleges that in 2017, there were no Buddhist services held on March 13, March 27, April 3, April 10, July 3, July 31, August 7, and August 28. (*See* ECF No. 4 at 19–20.) Plaintiff alleges that in 2018, there were "about six Mondays in a row" from January 1 to February 5 without Buddhist services. (*Id.* at 21.)

attending Buddhist services led by himself, or even another inmate minister, and the Court cannot determine otherwise from the evidence before it. As discussed above, Plaintiff testified that only services led by a Buddhist chaplain satisfy his religious beliefs. (*See* ECF No. 58-1 at 32:2–21; 42:6–13; 44:12–14.) Although Plaintiff does not ever allege that he is a Buddhist chaplain, or that there are other inmates who are Buddhist chaplains, it is unclear from the evidence before the Court whether inmate-led services would satisfy Plaintiff's sincerely held religious beliefs. Plaintiff testified that a Buddhist service satisfies his religion if the leader of the service is a Buddhist and can "educate [him] in some way about the Buddhist faith." (*Id.* at 39:12–15.) The Court therefore cannot conclusively determine that Plaintiff does not have a sincerely held religious belief in attending inmate-led Buddhist services without a Buddhist chaplain.

Defendants instead argue that they are entitled to summary judgment with respect to Plaintiff's request for inmate-led services because, under *Turner*, "Defendants' actions" in denying Plaintiff's "request for unsupervised inmate religious gatherings" are "reasonably related to a legitimate penological interest." (ECF No. 58-1 at 21.) In applying *Turner*, Defendants contend that Plaintiff "recognized there is a legitimate security concern when unmonitored inmates gather in an indoor group setting, including the potential for gang activity, and specifically claimed that this very security risk is [] 'an issue at RJD[CF].'" (*Id.*)

Again, as an initial matter, the only evidence before the Court concerning the responsibilities of Defendant Brown as the CRM is Plaintiff's undisputed deposition testimony that he believes Defendant Brown's responsibilities as the CRM included "mak[ing] sure that there were [Buddhist] services conducted," and finding, training, and "put[ting] in the position [volunteers] to conduct those services." (ECF No. 58-1 at 33:18–34:1.) There is no evidence before the Court suggesting in any way that Defendant Brown, as the CRM, was responsible for designating inmate ministers or approving inmates' requests to become inmate minsters, or that he denied any request by Plaintiff to be

///

designated as an inmate minister.[14]  When asked in his deposition if Plaintiff knew "who denied [his] request to have an inmate designated or cleared to hold services," Plaintiff testified that he did not remember, but "believed at that time it was a person by the name of Rushmore." (ECF No. 58-1 at 45:3–18.)  The Court finds that there is no evidence upon which a reasonable jury could conclude that Defendant Brown was responsible for designating inmate ministers or permitting inmate-led Buddhist services, and therefore, could not have placed a substantial burden on Plaintiff's exercise of Buddhism by failing to do so.  For this additional reason, Defendant Brown is entitled to summary judgment on Plaintiff's free exercise claim for a denial of inmate-led Buddhist services.

Although it need not continue with its analysis, the Court sees fit to addresses Defendants' argument that they are entitled to summary judgment under *Turner*.  As discussed above, *Turner* sets forth four factors for courts to consider when determining whether a regulation is reasonably related to legitimate penological interests: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation

---

[14]     Neither party provides evidence concerning who is responsible at RJDCF for designating inmate ministers.  However, the Court notes that, pursuant to Title 15, § 3211 of the California Code of Regulations, that the designation of an inmate minister is at the discretion of "the institution head."  Section 3211(a) provides that:

> [w]hen a chaplain of a particular faith cannot be obtained to conduct services within a facility housing inmate of that faith, the institution head may at their discretion and subject to the controls reasonably required for facility security, designate a qualified inmate minister to the religious needs of inmates for that specific faith.  In determining the qualifications of an inmate to conduct such services, the institution head will, whenever possible, seek the advice and counsel of outside religious leaders of that faith.

Cal. Code Regs. tit. 15, § 3211(a).  Plaintiff also cites to this section in his Amended Complaint, stating that "the warden may at his/her discretion . . . designate a qualified inmate to minister the religious needs of that particular faith."  (ECF No. 4 at 16.)

of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally"; and (4) the "absence of ready alternatives," or, in other words, whether the rule at issue is an "exaggerated response to prison concerns." 482 U.S. at 89–90. Defendants' argument, however, is based solely on the first factor, and Defendants contend, without citation, that "the Court need not go further in this four-prong analysis." (ECF No. 58-1 at 21.)

Although the *Turner* factors are not balancing factors, *see Beard*, 548 U.S. at 522, the Court cannot determine the "reasonableness" of the denial of inmate-led services without additional evidence supporting the first and remaining three factors. *See Swift v. Lewis*, 901 F.2d 730, 732 (9th Cir. 1990) ("Prison officials must at least produce some evidence that their policies are based on legitimate penological justifications. . . . In every case cited by [the defendants] in which legitimate penological interests justified a prison policy, the prison had produced some evidence concerning those justifications." (citations omitted)), *superseded by statute on other grounds*, 42 U.S.C. § 2000cc–1(a), *as recognized in Warsoldier v. Woodford*, 418 F.3d 989, 998 (9th Cir. 2005); *Lewis v. Ryan*, No. 04CV2468JLS(NLS), 2008 WL 1944112, at *24 (S.D. Cal. May 1, 2008) ("[W]hile Plaintiff ultimately must show the impact on prison operations would be insignificant, Defendants at the very least must provide the Court with enough factual specificity to support their claim that the asserted legitimate governmental interests they have put forward to justify their policy are grounded in real fiscal, efficiency, or security concerns."). Thus, without additional evidence and analysis with respect to *Turner*, the Court cannot recommend granting Defendants summary judgment on the basis that the denial of inmate-led services is reasonably related to legitimate penological interests.[15]

---

[15] The Court notes that the Ninth Circuit has recognized that inmate-led religious services can pose security threats to a prison, and in applying the *Turner* factors, has rejected a First Amendment challenge to a policy prohibiting inmate-led religious services. *See Anderson v. Angelone*, 123 F.3d 1197, 1199 (9th Cir. 1997) ("Nevada's prohibition on inmate-led religious services does not violate the First Amendment. . . . [T]he rule does

3. Conclusion

For the reasons set forth above, the Court finds that Defendant Brown is entitled to summary judgment on Plaintiff's free exercise claim concerning the deprivation of weekly chapel access for Buddhist inmates because of the absence of someone to supervise the inmates in the chapel. Accordingly, the Court **RECOMMENDS** that the District Court **GRANT** Defendants' Motion for Summary Judgment with respect to Plaintiff's First Amendment claim.

## D. RLUIPA Claim

The Court turns next to Defendants' argument they are entitled to summary judgment on Plaintiff's RLUIPA claim.

1. Legal Standard

Section 3 of RLUIPA provides that:

[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a). "Under RLUIPA, [the prisoner] bear[s] the initial burden of persuasion on whether [a] [p]olicy 'substantially burdens' [his] 'exercise of religion.'" *Hartmann*, 707 F.3d at 1124 (citing 42 U.S.C. § 2000cc–2(b)). Thus, the court must begin by "identifying the 'religious exercise' allegedly impinged upon." *Greene v. Solano Cty. Jail*, 513 F.3d 982, 987 (9th Cir. 2008). "Religious exercise" is "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. §

_____

not foreclose [the plaintiff] from practicing his religion; in fact, he is welcome to assist the prison chaplain in leading his religious activities.").

2000cc–5(7)(A); *Shakur*, 514 F.3d at 888. RLUIPA therefore "bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion." *Greene*, 513 F.3d at 987 (quoting *Cutter*, 544 U.S. at 725 n.13). Nevertheless, the Supreme Court has made clear that a prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation. *Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015).

The court must then address "whether the prison regulation at issue 'substantially burdens' that religious exercise." *Greene*, 513 F.3d at 987. A substantial burden on religious exercise "must impose a significantly great restriction or onus upon such exercise." *Id.* (quoting *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)). If the prisoner makes a showing of a substantial burden on the exercise of his religion, the court's analysis then turns to whether the defendant has established that the burden furthers "a compelling governmental interest," and does so "by the least restrictive means." 42 U.S.C. § 2000cc–l(a), (b); *Greene*, 513 F.3d at 988.

### 2. Discussion

In their motion, Defendants cite to *Hartmann* and argue generally that Plaintiff "cannot establish a substantial burden on the exercise of his faith" under RLUIPA for the same reasons Plaintiff cannot state a First Amendment claim. (ECF No. 58-1 at 23.) Plaintiff makes no substantive argument with respect to his RLUIPA claim in his opposition. (*See* ECF No. 64.)

The Court finds that Defendant Brown is entitled to summary judgment on Plaintiff's RLUIPA claim that his exercise of Buddhism was substantially burdened by a lack of weekly chapel supervision from non-Buddhist staff chaplains or correctional officers. Like the free exercise clause, Plaintiff's belief in attending weekly Buddhist services in the chapel with the supervision of a staff chaplain or correctional officer of another faith must be sincerely held to be protected under RLUIPA. *Holt*, 135 S. Ct. at 862. For the same reasons articulated above in the Court's free exercise analysis, the Court finds that Plaintiff's deposition testimony—wherein he admits that only services held with a Buddhist leader satisfy his Buddhist faith—shows that Plaintiff does not have a sincerely

held belief in attending weekly chapel services when those services are supervised by a staff chaplain or correctional officer of another faith. Because there is no genuine dispute of material fact that Plaintiff does not have a sincerely held belief in attending Buddhist services unless the services are led and supervised by a Buddhist, Defendant Brown is entitled to summary judgment on this aspect of Plaintiff's RLUIPA claim.

Additionally, Defendant Brown is entitled to summary judgment on Plaintiff's requests for the hiring of a full-time Buddhist chaplain and for inmate-led Buddhist services. Again, Plaintiff does not provide any evidence that Defendant Brown is responsible for the hiring of full-time chaplains at RJDCF or the designation of inmate ministers. Without any evidence tying Defendant Brown's responsibilities to Plaintiff's requests for these religious accommodations, Plaintiff cannot show that Brown substantially burdened his practice of Buddhism under RLUIPA by failing to provide such accommodations.

Accordingly, for these reasons, the Court **RECOMMENDS** that the District Court **GRANT** Defendants' Motion for Summary Judgment with respect to Plaintiff's RLUIPA claim for lack of weekly chapel access and Buddhist services.

**E.    Fourteenth Amendment Equal Protection Claim**

Finally, the Court turns to Defendants' argument that they are entitled to summary judgment on Plaintiff's equal protection claim. (ECF No. 58-1 at 23–25.) In the Amended Complaint, Plaintiff alleges that from 2016 through 2018, each defendant "intentionally discriminated against Plaintiff and other Buddhist prisoners because of their Buddhist faith by not providing [weekly] chaplain supervision for weekly scheduled services." (ECF No. 4 at 33.) Plaintiff further alleges that "[e]ach Defendant provided weekly chaplain supervision to other similarly situated religious groups, but not Buddhist[s]." (*Id.*)

In their motion, Defendants argue generally that "Plaintiff's claim fails because he cannot even establish that there was discrimination, let alone intentional discrimination, or that Defendants each engaged in such actions towards [Buddhist inmates]." (ECF No. 58-

///

38

1 at 23.) In response, Plaintiff makes no meaningful argument and simply states that he "has stated equal protection." (ECF No. 64 at 4.)

### 1. Legal Standard

The Fourteenth Amendment Equal Protection Clause prohibits the states from denying any person the equal protection of the laws, with the general objective "that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A viable equal protection claim under § 1983 requires a prisoner "to show that the defendant acted with an intent or purpose to discriminate against the [prisoner] based on membership in a protected class." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998), *cert. denied*, 525 U.S. 1154 (1999)). The "intent" component of a discrimination claim requires the prisoner to demonstrate that "the defendant acted at least in part because of the [prisoner]'s protected status." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003).

In the religious exercise context, "[p]risoners enjoy religious freedom and equal protection of the law subject to restrictions and limitations necessitated by legitimate penological interests." *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997) (citing *Bell v. Wolfish*, 441 U.S. 520, 545–46 (1979)), *overruled on other grounds by Shakur*, 514 F.3d at 884–85. "[P]rision officials cannot discriminate against particular religions" and "must afford an inmate of a minority religion 'a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts.'" *Id.* (quoting *Cruz*, 405 U.S. at 322). However, "prisons need not provide identical facilities or personnel to different faiths." *Id.* Rather, prisons "must make 'good faith accommodation of the [prisoners'] rights in light of practical considerations.'" *Id.* (quoting *Allen v. Toombs*, 827 F.2d 563, 569 (9th Cir. 1987)) (alteration in original). To defeat summary judgment on a religious discrimination claim, the prisoner must set forth specific facts showing that there is a genuine dispute "as to whether he was afforded

///

a reasonable opportunity to pursue his faith as compared to prisoners of other faiths and that such conduct was intentional." *Id.*

2. Discussion

As stated above, the Amended Complaint alleges unequal treatment to Buddhist inmates in terms of weekly access to the prison chapel for religious services because of an absence of supervision. (*See* ECF No. 4 at 33.) However, Plaintiff offers no evidence, such as a chapel schedule, substantiating the barebones allegations in his complaint that "[e]ach defendant provided weekly chaplain supervision to other similarly situated religious groups." (ECF No. 4 at 33.) Thus, there is no evidence showing that Buddhist inmates were not afforded "a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners." *Cruz*, 405 U.S. at 322. Moreover, Plaintiff offers no evidence that this alleged lack of supervision for weekly services in the chapel was the product of Defendant Brown's discriminatory intent. Plaintiff's allegations in the Amended Complaint—which is not verified and therefore, is not evidence on summary judgment—that Defendant Brown acted with intentional discrimination in not providing supervision for weekly Buddhist services is conclusory and insufficient to defeat a motion for summary judgment. (*See* ECF No. 4 at 33.) There is simply no evidence in the record that supports an inference that intentional discrimination animated Defendant Brown's alleged deprival of weekly chapel access and supervision for Plaintiff and other Buddhist inmates.

Plaintiff has not shown that there is a genuine dispute of material fact as to whether he was afforded a reasonable opportunity to pursue his faith compared to inmates of other religions. Defendant Brown is therefore entitled to summary judgment on Plaintiff's equal protection claim. Accordingly, the Court **RECOMMENDS** that the District Court **GRANT** Defendants' Motion for Summary Judgment with respect to Plaintiff's Fourteenth Amendment equal protection claim.

///

///

**F.     Qualified Immunity**

Finally, the Court turns to Defendants' argument that, even if Court finds that Defendants violated the constitution, they are entitled to qualified immunity because "none of the requests for relief Plaintiff makes here are 'clearly established' constitutional violations." (ECF No. 58-1 at 26.)

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The purpose of qualified immunity is to strike a balance between the competing "need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.*

A court conducts a two-prong analysis to determine whether a government official is entitled to qualified immunity.  *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001).  First, examining the alleged facts in favor of the plaintiff, the court must consider whether the alleged facts show the government official's actions violated the plaintiff's constitutional rights.  *Id.* at 201.  Second, the court must determine whether the constitutional right purportedly violated was clearly established in the specific context of the case at hand.  *Id.* A constitutional right is clearly established if it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  *Id.* at 202.  This standard "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"  *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (per curiam)).

The plaintiff "bears the burden" of showing that the rights at issue were clearly established at the time of the government official's alleged violation.  *Robinson v. York*, 566 F.3d 817, 826 (9th Cir. 2009) (quoting *Moran v. Washington*, 147 F.3d 839, 844 (9th Cir. 1998)).  The plaintiff need not identify "a case directly on point, but existing precedent

must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Further, the contours of the right established must be "undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

As discussed above, there is no genuine dispute of material fact that Defendant Brown did not violate Plaintiff's free exercise or equal protection rights.[16] As such, Defendant Brown is entitled to qualified immunity with respect to these claims.[17]

## V. CONCLUSION

For the reasons discussed above, **IT IS HEREBY RECOMMENDED** that the District Court issue an Order: (1) adopting this Report and Recommendation; (2) **GRANTING** Defendants' Motion for Summary Judgment.

///

///

---

[16] Qualified immunity does not apply to RLUIPA claims. *See Rogers v. Giurbino*, No.: 11cv560 WQH (RBB), 2016 WL 8578589, at *14 (S.D. Cal. July 22, 2016), *adopted by* 2016 WL 4651244 (S.D. Cal. Sept. 7, 2016).

[17] Although it need not proceed to the second prong, the Court agrees generally with Defendants that none of the "requests for relief" Plaintiff seeks are clearly established violations of the First Amendment. (ECF No. 58-1 at 25–26.) Although an inmate's right to attend religious services is clearly established, *see, e.g.*, *Hagen v. Jabar*, 56 F. App'x 302, 304 (9th Cir. 2002), the question here is whether an inmate is entitled to attend weekly religious services consistently every month. In his opposition, Plaintiff provides the standard for a qualified immunity analysis (*see* ECF No. 64 at 5), but he does not cite to any case that places beyond debate the question of whether inmates have a right to attend weekly religious services. *See also Chaparro v. Ducart*, No. C 14-4955 LHK (PR), 2016 WL 491635, at *11 (N.D. Cal. Feb. 9, 2016) (finding no precedent on point regarding "whether a prisoner's right to free exercise is denied when he is temporarily prohibited from attending weekly chapel services"), *affirmed by* 695 F. App'x 254, 255 (9th Cir. 2017). Additionally, and as discussed above, the First Amendment does not require prisons "to provide each inmate with the spiritual counselor of his choice." *Allen*, 827 F.2d at 569; *see also Hartmann*, 707 F.3d at 1123. Further, the Ninth Circuit has held that policies prohibiting inmate-led religious services do not violate the First Amendment when they are reasonably related to legitimate penological interests. *See Anderson*, 123 F.3d at 1199.

**IT IS ORDERED** that no later than **February 14, 2020**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **February 21, 2020**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

Dated: January 28, 2020

Hon. Jill L. Burkhardt
United States Magistrate Judge

18-cv-00548-WQH-JLB